The next case on the calendar is Manosalvas v. Sessions. Good morning, your honors. May it please the court. Alyssa Williams for the appellant petitioner. Your honors, there is one issue before us to get here today, an issue of first impression before the court, and that is whether physical presence for cancellation of removal is calculated from the date of issuance of a second notice to appear which has created new immigration removal proceedings. We know from the board's case law, the statutory language, and legislative history that indeed physical presence is from the notice to appear that created the current proceedings. The case law that's relevant are two board cases. The first, Matter of Mendoza, by the board in 2000, and then Matter of Cisneros, which was issued by the board four years later, and added to or clarified on Matter of Mendoza. In Matter of Mendoza, the board discusses the law that was put into place in 1996, which is where the stop time provision was added. And in Mendoza, the board clarifies, if there's an issuance of a notice to appear, or what was previously referred to as an order to show cause, that terminates the accrual of physical presence on the date that the notice to appear was issued. Matter of Cisneros, four years later, goes on to add to that and expand to that and clarify, well, what do we do if there's more than one notice to appear? It's in the government's discretion to either act on an original removal order and an original notice to appear, or to decide to issue a new notice to appear and create a new set of removal proceedings. Well, the government disagrees with that, doesn't it? I mean, the government says that they were not entitled, as I understand it, to reinstate the earlier proceedings because they can reinstate only when an alien has reentered illegally after having been removed or having departed voluntarily under an order. So if they didn't have the discretion to reinstate, why should we not treat this as a continued, kind of single-related proceeding? It's a very important point, Your Honor, because this word reinstatement can be used in a variety of ways. So there is a special regulatory provision which allows, after someone has reentered the country, for the government to invoke the reinstatement provisions and reinstate the original order. That's not the case here because Mr. Riven-De Niro never left. So what happens here is once the petitioner comes into immigration's custody, immigration authorities can decide to go forward with the original removal order. Reinstatement isn't really the word. They can just affect the original removal order. They have a removal order, they have the person in custody, he should be removed. It happens routinely. Instead, in this case, they decided, for various factual reasons, to instead put aside that removal order and issue a brand-new notice to appear and create brand-new removal proceedings. So I'm having trouble thinking of how your interpretation would work. It seems to me that if you're right, then there is every incentive upon receiving a notice to appear, not to appear, to perhaps there'll be an order of removal in absentia, but maybe you can wait it out. And then, if you're right, then it's in the government's incentive, instead of issuing a new notice to appear, just to go find you and grab you off the street. So if we're worried about putting people into the shadows, it seems the scheme that you're proposing would have the effect of people not showing up at their proceedings, and then being afraid of being arrested at any moment as they attempt to run out the clock. So what am I misunderstanding? No, I think you are misunderstanding, Your Honor, because the government's position, if the government did not issue new proceedings, the government just acted on the old order, people would never have the incentive to come forward. In some sense, the government here is giving Mr. Vendaniera another opportunity that they don't necessarily need to do. It's not as if, in this case, the petitioner did not wait ten years and then seek to reopen proceedings because he now had the ten years. That wouldn't have worked. The only way he qualifies is because the government of its own initiative decided to institute new proceedings. Perhaps I'm misunderstanding. But he didn't come forward, taking Judge Livingston's hypothetical. The only reason he's in the position he was is because of the commission of another crime. Absolutely, Your Honor, but the board case law specifically tells us that if the government issues a new notice to appear, we have to calculate physical presence from that date. If I can quote from the matter of Cisneros case, I think it's the most relevant and most enlightening decision to the facts that we have here. The board, in its holding, a very broad holding, says that the stop time rule was not intended to extend to charging documents issued in earlier proceedings. It only pertains to charging documents served in the proceeding in which the alien applies. It couldn't be more clear. When we started with this, the government had the option of proceeding by reinstating the earlier removal order. So there, by proceeding with the new NTA, you might make the inference that the government is saying, we want cancellation of removal to be considered as a possibility. Here you're saying that the only option, and I'm just trying to make sure I understand how this process works. What should the government, if the government wished to remove your client to proceed at this point, what should they have done instead of issue a new NTA? Proceeded with the removal, Your Honor. That's what happens every day. Which means arresting him? He was already arrested and in their custody, and they- But let's assume for the moment that he had not been arrested. Sure. It's a hypothetical, but let's assume that he's walking, that he's living in New York. How should they proceed? As they would in any other case, Your Honor. However the government uses its databases, it has an extensive network, ICE is out there every day. They find the people that they believe are priorities for deportation, and they effectuate the removal. But here, the situation was complicated, wasn't it? Because the first NTA was issued under an alias, and then this new one was under his actual name. That's correct, Your Honor, but the issue of an alias is, again, not something that's new. Routinely, and even in, I know, the cases before this court, we'll see AKAs. Most people, this is a 17-year-old, he was a 17-year-old boy at the first time he came, and then 19 gave a different name at the border. That's happening routinely every day. It does not prevent the government from deporting anyone. They just go ahead and add an AKA, an alias on the notice to appear in the removal documents. And even the alias didn't prevent them from bringing the new proceeding. In other words, once they learned of his arrest, they could have just gone forward on the earlier deportation order. The whole business about they couldn't reinstate because it's just nonsense. Exactly, Your Honor, and I think what's very important to note here is that the government tries to make a point that Mr. Revendaniera never left and re-entered the United States, that that somehow makes a difference. The case law is very clear that the issue is not who has left and re-entered, but how many notice to appears do we have, how many sets of removal proceedings. So the leaving and the re-entering is really not the operative, factual issue, but it's whether or not there's just one proceeding or multiple removal proceedings. May it please the court. Can I move the mic? You can move it down. Yeah. Sorry, I'm not as tall. You can also press a button and have the podium go a little lower, if you wish. Thank you. That's great, thank you. I apologize, I'm not as tall as other attorneys. May it please the court. Jenny Lee on behalf of the respondent, the Attorney General of the United States. The court should uphold the agency's denial of Mr. Revendaniera's cancellation of removal application, because unable to demonstrate the requisite ten years of physical presence, he is ineligible for relief. He can demonstrate it depending upon what the relevant proceeding is. If it's the one that is the latest one that the agency chose to bring, instead of just executing on the original deportation order, then he meets the ten years. Doesn't he, Andres Cisneros? Not necessarily, Your Honor. Under Cisneros, the board's decision was very narrow, and the reason why Cisneros does not apply to Mr. Revendera's case are two reasons. First, Cisneros-Gonzalez basically hinged on the fact that the alien departed and re-entered. So what you're saying is if the immigrant in this case had actually left the country and returned illegally, then Cisneros would govern? That is correct, Your Honor. That's preposterous. You're saying that if he had left the country and illegally entered, committed another crime, then he could get the benefit of Cisneros, when the final paragraph in Cisneros in which they summarize their opinion doesn't make reference to that fact at all. Well, the board's decision does reference the fact that that alien departed and re-entered. They mentioned it in the statement of facts, but not in the last paragraph of their opinion. I believe they discussed the re-entry aspect, that they were out from the re-entry. And the board did have some dissent in that case because, as Judge Corman indicated, it is preposterous that a person can violate a rule and come back and get another benefit. But if they enter lawfully- Your position is preposterous here. You're basically saying that the only reason that Cisneros doesn't govern here is because he didn't leave the country and enter illegally. Well, that is what the board found. And the reason why the board found this is because the decision basically hinged on the fact that if you comply with the removal order, because the agency, the Department of Homeland Security, puts in a lot of resources on identifying an alien and issuing removal proceedings. And once a removal order is actually issued, then there's a lot of, I guess, resources that are put in to the fact that the alien actually departs, and then they re-enter. And that's why, when the board considered the legislative intent- He did them a favor. He never left. Our applicant here, our petitioner, never left, so they didn't have to go through all that paperwork. What I don't understand is, why did you just deport him on the old order? Or why did you start a new proceeding? Your Honor, that's a very good question. The Department of Homeland Security has discretion, and they could have, sorry, not reinstate, they could have executed the prior order. However, let's not forget about the fact that Mr. Rivendera, when he was apprehended by immigration officers in 2000, he gave them a false name, false date of birth, and a false country of citizenship. I know, but then they found him, and what was, in whatever year he was arrested and committed the crime, they knew his name, and they knew what his situation was, they knew they had an order, in effect, that they could deport him under. Well, in 2015, when they re-apprehended him, they wanted to make sure that they had the correct person. They wanted to resolve any question as to identity, because again, he didn't just give a fake name. He gave a fake date of birth and country of citizenship. And so, rather than re-litigate his identity, they decided to put him into proceedings and clarify that issue. And now, Mr- How did we know that was the reason? It is stated in the record, in the I-213, which is found, I apologize for a moment. It's found on page 316, I believe. What does it say? It said, subject is an enforcement priority. He has already been ordered removed from the United States by immigration judge in Atlanta. But since subject lied to immigration officers about his true identity, name, date of birth, country of birth, country of citizenship, which resulted in judge's order of removal under the alias of Mizel Gutierrez Garcia, date of birth, December 13th, 1980. ERO determined, based on guidance from the Office of Chief Counsel, that subject will be served with a notice to appear pursuant to sections 212A6 and 212A7, and have respondent's true identity resolved before an immigration judge. But could the agency have reinstated the removal order? Executed the removal order? They could have. That was in their discretion. But the agency had a choice to make, starting new proceedings or acting on the old. Yes. What would executing the removal order have meant? That they would have arrested, if he hadn't been in custody, that they would have just arrested him at that point? That would mean that once they apprehend him, that they would arrest him, and then they would have to go back to the immigration court in Atlanta and ask that they modify the NTA to indicate his true name and true country of origin. So rather than do that, DHS exercises discretion. You say they couldn't have done that because he never left the country, and that reinstatement is available only for people who have actually left the country. Judge Corman, I apologize. There are two different processes that DHS could have engaged in here. Actually, just one, but there are two apples in the air, basically. There's reinstatement, which respondent's counsel indicated that DHS should have done, which is impossible because he did not leave. And then there's executing the prior order, which DHS could have done, but they didn't because he gave a false name, country of citizenship. And so rather than reopening the case in Atlanta, they decided, well, why don't we just reissue an NTA? And reopening the case in Atlanta could have established that he was what his true identity was. That is something that DHS could have done, but it was not done in this case. So there are consequences to that. And this- What is the agency's position? No, I'm sorry, go ahead. No, I was just going to say the board in the Cisneros case said that the 10 years starts back from the proceeding in which is actually brought, that is the new order to show cause. So you have a prior decision of the Board of Immigration and Appeals, which is a precedential decision and also was an en banc decision. Right. To the extent that that matters. So regarding the conclusion in Cisneros, the board said that thus, when DHS does not or cannot reinstate order against a previously deported alien, but instead places the alien in proceedings, the alien may demonstrate statutory eligibility for cancellation of removal by relying on a qualifying period of continuous physical presence accrued after reentry. Now, reentry was very important for the reasons I said earlier. They want to make sure that somebody complies with the removal order. So if there's a lawful reentry, then an alien who has been subject to a removal order, subject to an earlier proceeding, can start accruing 10 years of continuous presence, notwithstanding the previous removal order, is that right? Based on Cisneros, Your Honor, correct. And the second important reason why Cisneros is distinguishable from Mr. Revendanier's case is congressional intent. Congress drafted the stop time rule to close the loophole to prevent aliens from dragging out their deportation and somehow eventually being eligible to get the benefit of suspension. That's also consistent with, you know, you start the original proceeding and then there are efforts made to drag it out. Right. It also doesn't necessarily rule out the fact that when you've chosen to bring a new one, that that congressional intent, for whatever it's worth, I mean in terms of the source, is somehow being violated. There's language which suggests that they were concerned with the proceeding that was brought, being an alien having the incentive to stretch it out. For whatever, it could be seven years or ten, depending on a particular provision. Based on the circumstances of the congressional intent and what Mr. Revendanier would have wanted an alien like Mr. Revendanier, who gave a false name, date of birth, country of citizenship to immigration officers when he was first apprehended in 2000. Then he simply absconds, he doesn't go to immigration court. Then seven years later, he is arrested for operating a motor vehicle under the influence of. And you could have just tossed him out of the country seven years later. Actually. 15 years wouldn't have gone by and now you're in the position of basically. Judge Corman. If you read, if the brief of the petitioner is accurate, you're basically going to wreak destruction on his family. Your Honor, and then the DHS could not have picked him up in 2007 because again, he failed to appear to the state court proceedings. You found out about it when he, as a result of his arrest. And you must have known who he was because you went and arrested him. I don't understand any of this. And instead, you were the ones who dragged us out by choosing to bring another proceeding, and you have a decision in Cisneros, which says that the only thing that counts is if 10 years back from the proceeding that we're in right now. And why should we bend over backwards to destroy this family? Your Honor, there are equities on. When you had the opportunity to remove him seven years ago. Before, each year that goes by, he's got what, three or four children? Three of them are American citizens. He's got one child who's got terrible health problems. Your Honor, the government is sympathetic to Mr. Rivendare's case. However, Congress drew a line in the sand when they drafted the stop time rule. The board carved out a very narrow exception, which is for departure. Mr. Cisneros did not depart. Can I ask, just setting aside this case in its particulars for a moment. What sorts of factors influence the determination whether in a case where you could execute an outstanding order, what sorts of factors may influence the government in deciding to issue a notice, a new NTA? That's a matter of agency's discretion, and I do not know the particulars. The only reason why I know particulars in this case is because it was in the record. Okay. And it's your position in this case that the reason was that there would be some question of identity because he'd given false name and false particulars before. But why would that make you go under a new NTA as opposed to proceeding under the first, under the outstanding order? Why is it preferable to do a new NTA if there's a question about identity? I do not know that is the agency's discretion, and that was the decision that they made. Thank you. There are no further questions. Can I ask one question? How did they know who he was when he was arrested and they went to get him? I would assume that he must have . . . was he initially . . . is it the practice when they come in and they're caught as he was initially to fingerprint him? Yes. That is my understanding. And I assume he was fingerprinted when he was arrested. Yes. So they knew who he was. Thank you, Your Honors. Your Honors, unless there are any additional questions, the petitioner rests on his brief. Thank you. Thank you both for your argument. We'll take it under advisement.